## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL HISEY,** | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **QUALTEK USA, LLC et al.,** | : | **No. 18-5129** |
| *Defendants.* | : | |

### MEMORANDUM

PRATTER, J.                                                                                            AUGUST __, 2019

This is Michael Hisey's second attempt to sue his former employer, QualTek USA, LLC, and two QualTek executives for claims arising from QualTek's termination of Mr. Hisey's employment. Mr. Hisey brings claims here for (1) breach of contract, (2) violation of the Pennsylvania Wage Payment and Collection Law, and (3) retaliation under 42 U.S.C § 1981. In a previous lawsuit, Mr. Hisey's claims were premised chiefly on employment discrimination and were dismissed by a Florida federal court, without prejudice, for *forum non conveniens*.

Defendants move to dismiss, making two basic arguments. First, they seek to apply several preclusion rules because the action is allegedly duplicative of Mr. Hisey's prior suit. Those principles are claim preclusion, claim splitting, and judicial estoppel. Second, they assert that several alleged pleading deficiencies in the complaint require dismissal. Defendants also move for sanctions—including the sanction of dismissal—based on the same preclusion arguments.

As set forth below, the Court rejects all of the defendants' preclusion arguments. The Court also dismisses in its entirety the Pennsylvania Wage Payment and Collection Law claim and dismisses the § 1981 retaliation claim against the individual defendants only (granting leave to amend). Mr. Hisey's breach of contract claim survives, as does his § 1981 claim against QualTek.

1

Michael Hisey was the Chief Business Officer for QualTek USA, LLC—a multinational telecommunications company—from April 29, 2013 until December 4, 2014. Two separate aspects of Mr. Hisey's employment with QualTek are relevant to this action: First, Mr. Hisey's economic interest in QualTek; and second, Mr. Hisey's allegations that QualTek and its employees engaged in unlawful conduct. Each is addressed in turn.

## I.    Economic Interest Units

Certain employees at QualTek are granted "Economic Interest Units" in QualTek's "Economic Interest Unit Plan."[2] It appears, based on a review of the Economic Interest Unit Plan, that each "Unit" conferred upon an employee represents a one percent (1%) financial stake in QualTek (after reductions for certain debts, expenses, and distribution preferences).

The grant of each Unit is subject to certain conditions. As Mr. Hisey's Economic Interest Unit offer letter states, "the Units vest over time, but are subject to forfeiture in whole or in part," and employees with Units are required to "continue to be employed by the Company or its subsidiaries in order to receive any economic benefits under the Plan." Amended Compl., Ex. A (Offer Letter). Those limitations are discussed in greater detail in the Economic Interest Unit Plan itself and are outlined below.

---

[1]    The Court accepts as true all facts as alleged in the Amended Complaint for purposes of considering the pending motions.

[2]    The Economic Interest Unit Plan is Exhibit A to the Amended Complaint.

## A. Terms of the Units

According to the Economic Interest Unit Plan, employees' Units are effective "only for so long as the Participant remains an Employee of [QualTek], and shall be immediately cancelled and forfeited if the Participant ceases to be an Employee of [QualTek] for any reason, unless redeemed pursuant to [terms identified] below." Amended Compl., Ex. A (Plan ¶ 6(f)). Once an employee's employment is terminated, the circumstances of that termination dictate whether the employee is compensated for his or her Units.

## B. Effect of Termination on Units' Status

Under the Economic Interest Unit Plan, an employee who is terminated must (1) forfeit *unvested* Units entirely, without compensation, and (2) allow QualTek to redeem *vested* Units pro rata, based on a formula reflecting QualTek's estimated market value. Redemption means that QualTek pays the terminated employee for his or her Units.

Whether, upon employment termination, Units are forfeited or redeemed turns on two factors: (1) whether the Units are vested, and (2) whether the employment was terminated without cause or with cause.

## C. Vesting of Units

Each Unit vests pursuant to two independent mechanisms, one based on the passage of time and one based on the performance of QualTek. Over the five years following the grant of a Unit, 50% of the Unit can vest pursuant to automatic, time-passage-based vesting, and 50% of the Unit can vest pursuant to performance-based vesting.

First, a portion (up to 50%) of each Unit vests automatically over time. Over the five years immediately following the grant of a Unit, that Unit vests 10% per year, beginning one year after the Unit was granted. In other words, if a Unit is granted on January 1, 2020, 10% of that Unit

3

vests on January 1, 2021, and then another 10% vests on January 1 in each of the subsequent four years. Before January 1, 2021, however, that Unit is unvested.

Second, a portion of each Unit (up to 50%) has the possibility of vesting based on the performance of QualTek over the five years immediately following the grant of a Unit.[3]

If a Unit is *not vested*, any terminated employee forfeits the Unit, regardless of whether employment is terminated without cause or with cause.

If a Unit is *vested*, whether a terminated employee's Units are redeemed turns on whether the employment is terminated with or without cause.

### D. Termination Without Cause or With Cause

For vested Units only, employees whose employment is terminated *without cause* (or due to death or disability) shall have that Unit redeemed by QualTek. A redeemed Unit is bought back by QualTek, with payments made in annual installments.

Termination *with cause* (or because the employee voluntarily quit) causes forfeiture of that Unit.

Thus, only employees with *vested* Units whose employment is *terminated without cause* are entitled to redemption of their Units.

---

[3]     Over the five calendar years immediately following the grant of the Unit, including the calendar year in which a Unit is granted, each Unit vests 10% (in addition to the time-triggered vesting) if QualTek achieves the "prospective targets [set] in [QualTek's] annual Budget for its desired NIBT," or Net Income Before Taxes. Amended Compl., Ex. A (Plan ¶ 6(e)). If QualTek does not achieve its annual targeted NIBT (a "deficiency year"), then the deficiency year's 10% of the Unit is forfeited, unless, in the year after the deficiency year, QualTek's NIBT plus its NIBT from the deficiency year meets or exceeds the sum target NIBT of the post-deficiency year and the target NIBT from the deficiency year. In other words, if QualTek's target NIBT for 2020 is $100 million and its target NIBT for 2021 is $150 million, 10% of each Unit vests (1) at the end of 2020 if QualTek's actual NIBT is $100 million or (2) at the end of 2021 if QualTek's NIBT for 2020 plus its NIBT for 2021 meets or exceeds $250 million. In the latter scenario, 10% of each Unit would vest for 2020 and 2021 respectively.

4

## E. Mr. Hisey's Economic Interest Units.

On January 24, 2014, Mr. Hisey and QualTek entered into an agreement that granted Mr. Hisey 3 Units (*i.e.*, a 3% stake in QualTek). On December 4, 2014, before any of the Units were vested, QualTek terminated Mr. Hisey's employment. Mr. Hisey alleges that his employment was terminated without cause. QualTek did not redeem any of Mr. Hisey's unvested Units.

## II. Mr. Hisey's Allegations of Retaliation[4]

Mr. Hisey alleges that while he worked for QualTek, he reported several instances of racial discrimination and was fired as a result of those reports. Mr. Hisey alleges that he was aware of several instances of employees at QualTek using racial slurs or racially insensitive language and that he reported those offending employees to QualTek executives. Mr. Hisey also allegedly filed a formal complaint of race discrimination after QualTek executives refused to offer an ownership interest to an African-American employee but offered the same ownership interest to similarly qualified white employees. According to Mr. Hisey, he was fired eleven days after filing this formal complaint.

## PROCEDURAL HISTORY

This dispute has a somewhat fraught history, much of which predates this Eastern District of Pennsylvania action. The chart below briefly summarizes the procedural history:

---

[4]     In this action, Mr. Hisey's allegations about employer misconduct focus only on retaliation. As discussed in the Procedural History section, Mr. Hisey previously sued QualTek in Florida, and in that action Mr. Hisey's allegations about employer misconduct focused on sex discrimination, disability discrimination, sexual orientation discrimination, hostile work environment, and retaliation. This section only discusses the retaliation allegations at issue in this action.

| *Hisey I* (Florida lawsuit that preceded this action) | |
|---|---|
| EEOC issues right to sue letter | 11/24/2015 |
| *Hisey I* complaint filed in Florida state court | 12/14/2015 |
| *Hisey I* removed to S.D. Fla. | 2/1/2016 |
| *Hisey I* dismissed for *forum non conveniens* | 4/13/2016 |
| *Hisey I* reconsideration of dismissal denied | 5/12/2016 |
| *Hisey I* parties participate in Eleventh Circuit Court of Appeals mediation | 9/23/2016 |
| *Hisey I* dismissal affirmed by Eleventh Circuit Court of Appeals | 10/9/2017 |
| *Hisey II* (this action filed in E.D. Pa.) | |
| *Hisey II* complaint filed | 11/28/2018 |
| *Hisey II* motion for sanctions filed | 11/28/2018 |
| *Hisey II* first motion to dismiss filed | 1/28/2019 |
| *Hisey II* amended complaint filed | 2/19/2019 |
| *Hisey II* second motion to dismiss filed | 2/26/2019 |

In December 2015, about a year after Mr. Hisey was fired, he sued QualTek and two of its executives (Joseph Kestenbaum and Christopher Hisey) in Florida state court. *See Hisey v. QualTek USA, LLC, et al.,* No. 16-60197 (S.D. Fla.) (*"Hisey I"*).[5] Mr. Hisey brought ten claims: (1) Florida law wrongful termination; (2) Florida law medical disclosure violation; (3) Florida law unlawful employment practices; (4) Broward County hostile work environment violation; (5) Broward County sexual orientation discrimination; (6) Title VII wrongful termination; (7) Title VII sex discrimination; (8) Title VII hostile work environment; (9) Title VII retaliation; and (10) ADA discrimination. Notice of Removal and Complaint, *Hisey I* (Doc. No. 1). The crux of these claims was that QualTek and its employees discriminated against Mr. Hisey for being gay and because of a medical condition.

QualTek removed *Hisey I* to the federal court in the Southern District of Florida. *Id.* The district court dismissed Mr. Hisey's lawsuit for *forum non conveniens*, because Mr. Hisey's

---

[5]     The Court takes judicial notice of the filings from the previous *Hisey I* litigation in Florida. *See Schuylkill Health Sys. v. Cardinal Health, Inc.*, No. 12-7065, 2014 WL 3805466, at *1 (E.D. Pa. Mar. 14, 2014) (taking "judicial notice of [] court filings because, as public filings on the docket of a district court, they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

employment contract included a forum selection clause requiring that he bring suit in Pennsylvania. *See generally* Order Granting Mot. to Dismiss, *Hisey I* (Doc. No. 25). Mr. Hisey moved for reconsideration of the dismissal, which the court denied. Mot. for Reconsideration and Order Denying Mot. for Reconsideration, *Hisey I* (Doc. Nos. 26, 27). In its order denying reconsideration, the court emphasized that the dismissal was without prejudice because *forum non conveniens* dismissal is not on the merits. *See* Order Denying Mot. for Reconsideration at 2, *Hisey I* (Doc. No. 27) ("Dismissal on grounds of *forum non conveniens* is not a determination on the merits and is therefore without prejudice.").

The Eleventh Circuit Court of Appeals affirmed the dismissal for *forum non conveniens*. *See generally Hisey v. QualTek USA, LLC*, 753 F. App'x 698 (11th Cir. 2018). In the briefing and during oral argument, Mr. Hisey argued for reversal because, among other reasons, even though the district court's dismissal was without prejudice, the *effect* of the dismissal would be with prejudice because his Title VII and ADA claims became time-barred during the initial district court litigation. *See, e.g.*, Brief of Appellant at vii–viii, *Hisey v. QualTek USA, LLC*, No. 16-13477 (11th Cir. Aug. 5, 2016). Nonetheless, the Eleventh Circuit Court of Appeals left in place the dismissal, stating that "dismissal for *forum non conveniens* of a lawsuit brought by one who has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause results in no injustice on the plaintiff who loses out completely through the running of the statute of limitations." *Hisey v. Qualtek USA, LLC*, 753 F. App'x at 705 (quotation and citation omitted).

With Mr. Hisey's Florida action concluded and his Title VII and ADA claims time-barred, he filed this action against the same defendants, alleging (1) breach of contract, (2) violation of the Pennsylvania Wage Payment and Collection Law, and (3) a 42 U.S.C. § 1981 claim for retaliation.

7

Defendants moved to dismiss and for sanctions, arguing that the new action is barred by claim preclusion, claim splitting, and judicial estoppel, as well as asserting that the complaint fails to state a claim. After Mr. Hisey amended his complaint, the defendants renewed their motion to dismiss. The Court heard oral argument on the motion.

## DISCUSSION

The defendants moved both to dismiss Mr. Hisey's claims and for sanctions against Mr. Hisey. Because the substance of motion for sanctions is entirely duplicative of Defendants' motion to dismiss, the Court addresses the motion to dismiss first. The Court grants in part and denies in part the motion to dismiss, but rejects all of the arguments regarding preclusion, which form the basis of Defendants' motion for sanctions. Consequently, the Court denies the motion for sanctions.

## I.    Motion to Dismiss

The defendants' motion to dismiss can be divided generally into two categories. First, Defendants make arguments based on various principles of preclusion, all of which implicate the alleged overlap between this action and Mr. Hisey's previously filed (and dismissed) Florida lawsuit. Second, Defendants make arguments about alleged pleading deficiencies that purportedly undermine each of Mr. Hisey's claims. The Court rejects all of the defendants' preclusion arguments, refuses to dismiss the breach of contract claim, dismisses the WPCL claim with prejudice, and dismisses the § 1981 claim against the individual defendants only, without prejudice and with leave to amend.

## A. Legal Standard

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). To survive a Rule 12(b)(6) motion, therefore, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the plaintiff "will ultimately prevail . . . but whether [the] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and quotation omitted). Thus, assessing the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Pa. Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain accepted benchmarks. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citation omitted); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). The Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

9

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and quotation omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

## B. Whether Preclusion Requires Dismissal of Mr. Hisey's Complaint

Defendants argue that three theories of preclusion require dismissal: (1) claim preclusion, (2) claim splitting, and (3) judicial estoppel.

### 1. Claim Preclusion

"[C]laim preclusion, formerly referred to as *res judicata*, gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding. Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 276 (3d Cir. 2014) (citations and quotation omitted). Some judgments, however, "do *not* pass upon the substantive merits of a claim and hence do not (in many jurisdictions) entail claim-preclusive effect." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502 (2001) (emphasis in original); *see also* Wright & Miller, 18A Fed. Prac. & Proc. Juris. § 4437 (3d ed.) ("In ordinary circumstances a second action on the same claim is not precluded by dismissal of a first action for prematurity or failure to satisfy a

10

precondition to suit. No more need be done than await maturity, satisfy the precondition, or switch to a different substantive theory that does not depend on the same precondition.").

The only dispute here is whether the Florida district court's dismissal in *Hisey I*, for *forum non conveniens*, was a judgment "on the merits" and therefore entitled to claim-preclusive effect. Generally, "[a] *forum non conveniens* dismissal denies audience to a case on the merits; it is a determination that the merits *should be adjudicated elsewhere.*" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) (emphasis added, quotation and citation omitted). In other words, *forum non conveniens* "is a non-merits ground for dismissal." *Id.* (quotation and citation omitted); *see also Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018) (A "*forum non conveniens* dismissal—much like the parties' dispute over transfer—is a 'nonmerits issue' that 'does not entail any assumption by the court of substantive law-declaring power.'") (quoting *Sinochem*, 549 U.S. at 433) (other citations omitted). Multiple courts have specifically held that a *forum non conveniens* dismissal does not have claim-preclusive effect.[6]

The Florida district court in *Hisey I* recognized, in its order denying Mr. Hisey's motion for reconsideration of the dismissal, that the "[d]ismissal on grounds of *forum non conveniens* is not a determination on the merits and is therefore without prejudice." Order Denying Mot. for Reconsideration at 2, *Hisey I* (Doc. No. 27). Nonetheless, Defendants argue that this Court should treat the *Hisey I* dismissal as though it was *effectively* on the merits, because the dismissal resulted

---

[6]    *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 679 (5th Cir. 2003) ("[A]n f.n.c. dismissal is not a claim-preclusive judgment."); *Cook v. Champion Tankers AS*, No. 12-01965, 2013 WL 1629136, at *3 (N.D. Cal. Apr. 16, 2013) (*Forum non conveniens* dismissal "was not an adjudication on the merits. Rather, it was a dismissal based on procedural grounds. Accordingly, [the defendant's] motion to dismiss the complaint based on res judicata is denied.") (internal citations omitted); *cf. McGinnis v. United States Cold Storage, Inc.*, No. 17-08054, 2018 WL 6959447, at *1 (N.D. Ill. Sept. 30, 2018) ("[U]nlike non-merits questions such as abstention, *forum non conveniens*, and sovereign immunity, a decision based on the statute of limitations is a final judgment on the merits of a claim (it also has claim-preclusion effects).").

11

from a mandatory forum selection clause and because Mr. Hisey's claims in *Hisey I* were time-barred at the time of the dismissal. The defendants' argument rests on dicta from a 2013 Supreme Court case (which they misread) and on inapposite Third Circuit Court of Appeals cases (which do not stand for the proposition cited).

In *Atl. Marine Constr. Co., Inc. v. U.S. District Court for the W.D. Tex.*, 571 U.S. 49 (2013), the Supreme Court reviewed denial of a motion to dismiss or transfer, which was premised on a contractual forum-selection clause. The Court held that (1) in all but the most unusual circumstances, courts should enforce forum-selection clauses, and (2) a motion to transfer, under 28 U.S.C. § 1404, is the proper way to effect said enforcement. *Id.* at 66.[7] In so doing, the Court commented in a footnote that:

> [A] successful motion under forum non conveniens requires dismissal of the case. That inconveniences plaintiffs in several respects and even makes it possible for plaintiffs to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate. Such caution is not warranted, however, when the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause. In such a case, dismissal would work no injustice on the plaintiff.

*Id.* at 66 n.8 (internal quotations and citations omitted).

The defendants latch onto the quoted portions of the quoted footnote. They focus on the Supreme Court's observation that a *forum non conveniens* dismissal may cause a plaintiff to "lose out completely," and argue that this essentially created a new rule stating that dismissal for *forum non conveniens* based on a contractual forum-selection clause is effectively with prejudice for

---

[7]     The Court rejected motions under 28 U.S.C. § 1406 and Federal Rule of Civil Procedure 12(b)(3) as improper mechanisms to bring a *forum non conveniens* challenge. *Atl. Marine Constr. Co., Inc.*, 571 U.S. at 55–59. The Court did not resolve the question of whether a motion to dismiss under Rule 12(b)(6) is a proper vehicle for moving to dismiss on *forum non conveniens* basis where there is a valid forum-selection clause. *Id.* at 61.

claim preclusion purposes. Defendants ignore the qualifying clause, however, which makes clear that the Supreme Court was only emphasizing that plaintiffs may lose out "through the running of the statute of limitations[.]" *Id.* The defendants also suggest that the last lines of the footnote, that *forum non conveniens dismissal* "would work no injustice on the plaintiff" when courts enforce forum-selection clauses, means that *forum non conveniens* dismissal must be with prejudice in such a circumstance. But that broad statement could just as plainly mean that plaintiffs are not done injustice by *forum non conveniens* dismissal where forum selection clauses explicitly provide a separate forum in which to bring suit. Nothing in the language in *Atlantic Marine* suggests that the Supreme Court announced a new rule abrogating *Sinochem*.

Indeed, the Supreme Court "does not normally overturn, or so dramatically limit, earlier authority *sub silentio.*" *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000). *Atlantic Marine* does not call into question—let alone explicitly renounce—*Sinochem*'s observation that "[t]he critical point here, rendering a *forum non conveniens* determination a threshold nonmerits issue in the relevant context, is simply this: Resolving a *forum non conveniens* motion does not entail any assumption by the court of substantive 'law-declaring power.'" 549 U.S. at 433 (citation omitted).

Seemingly recognizing that it is extremely unlikely that *Atlantic Marine* abrogated *Sinochem sub silentio* in a footnote, the defendants' reply brief instead suggests that *Atlantic Marine* and *Sinochem* do not conflict because *Sinochem* did not involve a valid forum-selection clause and *Atlantic Marine* did. According to the defendants, there are essentially two *forum non conveniens* regimes: one in which dismissal is *on the merits* because the plaintiff has not complied with a valid forum selection clause, and one in which dismissal is *not on the merits* because the plaintiff has not filed the complaint in the proper forum but also has not contravened a forum-

13

selection clause. Defendants cite no language from *Atlantic Marine explicitly* drawing any such distinction, and they point to no cases citing *Atlantic Marine* for that proposition. Indeed, decisions since *Atlantic Marine* nonetheless have treated dismissal for *forum non conveniens* because of a forum-selection clause as not on the merits. *See, e.g., Allred v. Innova Emergency Med. Assocs., P.C.*, No. 18-03633, 2018 WL 6250853, at *2 (N.D. Cal. Nov. 29, 2018) (in denying motion for attorneys' fees, commenting that "previous order dismissing [t]his suit pursuant to [a] forum selection clause is not an adjudication on the merits as a matter of law"); *Midwest Project Servs., LLC v. Advantage Sales & Mktg., LLC*, No. 17-2273, 2017 WL 4123302, at *2–4 (D. Kan. Sept. 18, 2017) (applying both *Sinochem* and *Atlantic Marine* and granting motion to dismiss for *forum non conveniens*, based on forum selection clause, without prejudice). Furthermore, defendants' argument ignores that the purpose of *forum non conveniens* doctrine is not punitive: "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).

Because earlier authority, *i.e., Sinochem*, makes clear that *forum non conveniens* dismissal is not on the merits, 549 U.S. at 432, the somewhat general language from a footnote in *Atlantic Marine* cannot fairly be read to abrogate *Sinochem* or create two separate *forum non conveniens* regimes.

Defendants next argue that although *Hisey I* itself stated that its dismissal was without prejudice, "the facts and circumstances of that action dictate that the dismissal was effectively with prejudice (and thus on the merits)." Mot. to Dismiss at 24. The defendants assert that because the statute of limitations for Mr. Hisey's Title VII claims expired before *Hisey I's forum non conveniens* dismissal, the *Hisey I* dismissal was at that time *effectively* a dismissal with prejudice *and* an adjudication on the merits.

14

Although the defendants are correct that Mr. Hisey could not refile his time-barred claims after *Hisey I*, Mr. Hisey has not attempted to do so. Instead, he filed new claims, which he asserts are not time-barred. Defendants' only citations for their "effectively with prejudice" argument are not persuasive. They attribute to the Third Circuit Court of Appeals the statement that "'the effect of a dismissal without prejudice where the statute of limitations has run is the same as dismissal with prejudice: it bars a subsequent action.'" Mot. to Dismiss at 25 (quoting *Green v. Humphrey Elevator & Truck Co.*, 816 F.2d 877, 879 n.4 (3d Cir. 1987)). But the quoted language from *Green* only appeared in a parenthetical citation to an unpublished 1984 Western District of Pennsylvania case, *Leger v. Ohio Barge Lines, Inc.*, 38 Fed. R. Serv. 1233, 1233 (W.D. Pa. 1984). And the *Green* citation to *Leger* was part of a string cite for the uncontroversial proposition that the appellate court had jurisdiction to review a dismissal order that was "final" because "the statute of limitations on appellant's cause of action ha[d] run." 816 F.2d at 879 n.4.

The defendants' other cases are similarly off base. They cite *Brennan v. Kulick*, 407 F.3d 603 (3d Cir. 2005) for the proposition that "'the dismissal of a complaint without prejudice after the statute of limitations has run forecloses the plaintiff's ability to remedy the deficiency underlying the dismissal and refile the complaint.'" Mot. to Dismiss at 25 (quoting *Brennan*, 407 F.3d at 606). But no one disputes that Mr. Hisey cannot re-raise the same time-barred claims in this litigation. Instead, he has filed a *new* complaint with *new* claims that are unaffected by the deficiencies in the prior complaint.

The defendants also cite *Kreidie v. Sec'y, Pennsylvania Dep't of Revenue*, 574 F. App'x 114 (3d Cir. 2014), to assert that "'a procedural dismissal [may be] an adjudication on the merits having preclusive effects on subsequent actions[.]'" Mot. to Dismiss at 22 (quoting *Kreidie*, 574 F. App'x at 117). According to the defendants, it follows that the procedural dismissal in *Hisey I*,

for *forum non conveniens*, can be treated as on the merits. But neither *Kreidie* nor any of the cases cited in *Kreidie* involved a previous *forum non conveniens* dismissal. In *Kreidie*, the previous procedural dismissal resulted from the plaintiff's failure to oppose a motion to dismiss. 745 U.S. at 115. The court adopted an exception to the general definition of "on the merits" from the Restatement (Second) of Judgements, stating that "an order may be considered a judgment on the merits, 'even though the substantive issues have not been tried, especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding, or has *deliberately flouted orders of the court*.'" *Id.* at 117 (quoting Restatement (Second) of Judgments § 19 cmt. a) (emphasis added). This exception is not applicable here, as Mr. Hisey did not deliberate flout court orders in *Hisey I*. Though the court in *Kreidie* may be correct that *some* procedural dismissals may effectively be on the merits, Defendants' reading of *Kreidie* would place the Third Circuit Court of Appeals in direct conflict with the Supreme Court's decision in *Sinochem*, which accepted that *forum non conveniens* specifically "is a non-merits ground for dismissal." 549 U.S. at 432 (citation and quotation omitted).

Further distinguishing *Kreidie* from the facts of this case, the Third Circuit Court of Appeals held that the situation fell "within the scope of Federal Rule of Civil Procedure 41(b)," which states that "'any dismissal not under this rule—*except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19*—operates as an adjudication on the merits.'" 745 U.S. at 117 (quoting Fed. R. Civ. P. 41(b) (emphasis added). Here, alternatively, the district court in *Hisey I* explicitly held that its *forum non conveniens* dismissal was subject to the emphasized exception to Rule 41, meaning that *Hisey I* was not an adjudication on the merits under the Rule. Order Denying Mot. for Reconsideration at 2, *Hisey I* (Doc. No. 27) ("The exceptions articulated

16

in Rule 41(b) may include dismissal under the doctrine of *forum non conveniens*.") (citation omitted).

Defendants misconstrue the caselaw on which they rely, and they do not cite a single case showing that a *forum non conveniens* dismissal enforcing a forum-selection clause is a judgment on the merits with claim-preclusive effect. Instead, because the Supreme Court said unambiguously in *Sinochem* that a *forum non conveniens* dismissal is not on the merits, the Court rejects the defendants' claim preclusion argument.

### 2. Claim-Splitting

The defendants next argue that the claim-splitting doctrine precludes Mr. Hisey from bringing this action. "Claim-splitting[,] also known as the rule against duplicative litigation[,] has been described as the other action pending facet of the *res judicata* doctrine." *Prewitt v. Walgreens Co.*, No. 12-6967, 2013 WL 6284166, at *5 (E.D. Pa. Dec. 2, 2013). The Supreme Court has long said that a plaintiff "is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail[s]." *Stark v. Starr*, 94 U.S. 477, 485 (1876). The only issue here is whether claim-splitting only prohibits plaintiffs from litigating two separate but overlapping actions *pending at the same time*, or if the doctrine also precludes the filing of *sequential* actions.

The defendants assert that Mr. Hisey cannot bring his current § 1981 claim now because he did not raise it in the first action, and claim splitting "prohibits a plaintiff from prosecuting his case piecemeal and requires that all claims arising out of a single alleged wrong be presented in one action." *Sparks v. Children's Place*, No. 17-1057, 2017 WL 4765651, at *1 (E.D. Pa. Oct. 20, 2017). But the cases cited by the defendants all involved dismissal for claim-splitting because two actions were both pending *at the same time*, resulting in dismissal of the second-filed suit; no case

17

involved dismissal of a second lawsuit filed *after* the dismissal of the first lawsuit. *See Prewitt*, 2013 WL 6284166, at \*2 (dismissing because second action filed after court denied motion to amend in first action, but while first action was still ongoing); *Sparks*, 2017 WL 4765651, at \*1 (staying second action where two actions were pending simultaneously, the first filed in New Jersey federal court and the second in Pennsylvania federal court); *Katz v. Gerardi*, 655 F.3d 1212, 1219 (10th Cir. 2011) (affirming dismissal of second filed suit where two suits were pending at same time, in the same district court, involving the same subject matter); *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 837 (11th Cir. 2017) (affirming dismissal of second action filed while summary judgment was pending in first action). The defendants do not identify any case applying the claim-splitting rule to a second lawsuit not pending at the same time as the first.

The Restatement (Second) of Judgments also suggests that claim-splitting is inapplicable in this case. Restatement § 26 says:

> When any of the following circumstances exists, the general [claim preclusion] rule . . . does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant . . . (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action[.]"

Restatement (Second) of Judgments § 26.

Comment b to § 26 elaborates that dismissal without prejudice is one way that courts "expressly reserve[]" the right to initiate a second suit:

> *A determination by the court that its judgment is "without prejudice"* (or words to that effect) to a second action on the omitted part of the claim, expressed in the judgment itself, or in the findings of fact, conclusions of law, opinion, or similar record, unless reversed or set aside, *should ordinarily be given effect in the second action.*

Restatement (Second) of Judgments § 26, cmt. b (emphasis added); *cf. Venuto v. Witco Corp.*, 117 F.3d 754, 759 (3d Cir. 1997) (embracing application of § 26 and Comment b to preclusion analysis under federal law).

Applying the Restatement here is consistent with the *Hisey I* court's decision to dismiss that case without prejudice. The *Hisey I* court held that (1) Florida was the wrong forum for that litigation, and (2) Mr. Hisey could refile his suit in Pennsylvania. *See* Order Denying Mot. for Reconsideration at 3, *Hisey I* (Doc. Nos. 27) ("Any concerns the Parties have about the timeliness of Plaintiff's renewed claims must be addressed in the Pennsylvania courts.") It follows that the *Hisey I* court anticipated that Mr. Hisey would file suit in Pennsylvania (the forum identified in the forum-selection clause). The defendants' position is inconsistent with the Restatement and with the *Hisey I* court's dismissal without prejudice.

The Court concludes that claim-splitting only applies when two lawsuits are pending simultaneously, but not when one lawsuit is filed after the first suit is dismissed without prejudice.

### 3. Judicial Estoppel

Defendants' third preclusion argument is that judicial estoppel should apply to prevent Mr. Hisey from taking a position in this litigation that is inconsistent with the position he took in *Hisey I*. "[T]he basic principle of judicial estoppel is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003). Nonetheless, judicial estoppel is "not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." *Id.* To establish that judicial estoppel is warranted, the Court must make three determinations:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is

19

> unwarranted unless the party changed his or her position in bad faith
> –i.e., with intent to play fast and loose with the court. Finally, a
> district court may not employ judicial estoppel unless it is tailored
> to address the harm identified and no lesser sanction would
> adequately remedy the damage done by the litigant's misconduct.

*Id.* (citations and quotations omitted).

Here, Mr. Hisey argues that the defendants cannot satisfy either of the first two requirements, *i.e.,* Mr. Hisey asserts that (1) he has not taken a position in this action that is "irreconcilably inconsistent" with *Hisey I*, and (2) he has not changed his position "in bad faith." Because the record is clear that Mr. Hisey has not taken positions that are "irreconcilably inconsistent," the Court need not discuss the "bad faith" requirement.

According to Defendants, in *Hisey I*, Mr. Hisey "unequivocally alleged employment discrimination on the basis of sex, sexual orientation/gender identity, and disability, and claimed that such discrimination was the purported basis for his employment separation. Plaintiff never once alleged *race-based discrimination* as the basis for his alleged termination or purported employment discrimination claim; nor did he allege any contract-based claims (instead denying the validity of his employment agreement)." Mot. to Dismiss at 32–33 (emphasis added). Upon close analysis, the defendants incorrectly describe both the claims in *Hisey I* and the claims in this action.

### i. Whether Mr. Hisey's Current Retaliation Claim Is Inconsistent with His Claims in *Hisey I*

First, as a threshold issue, the § 1981 claim here is not based on race discrimination against Mr. Hisey; instead the claim is for retaliation by QualTek after Mr. Hisey reported race discrimination against others at QualTek. *See* Amended Compl. Count II. Second, although the defendants are correct that the allegations in *Hisey I* primarily stemmed from the defendants' alleged discrimination against Mr. Hisey because of his disability and his sexual orientation, Mr.

20

Hisey also brought a claim (Count IX) for Title VII retaliation. In *Hisey I*, Mr. Hisey alleged in

relevant part:

> 60. In addition JAMES WISE would make comments regarding homosexual
> individuals as being abnormal *and racial slurs* regarding other QUALTEK
> employees and affiliates.

> 61. *All* of these deplorable acts of depravity by CHRISTOPHER HISEY, JAMES
> WISE, and others, *were reported by Plaintiff* to LIZ DOWNEY, as Director of
> Human Resources, and JOSEPH KESTENBAUM, Chairman, and nothing was
> done to curb the hostile atmosphere fostered at QUALTEK.

> 91. Plaintiff was the victim of *retaliatory conduct* on behalf of the Defendants, as
> a result of Plaintiff's reporting to human resources of the conduct of Defendants
> and employees of Defendants.

> 92. Plaintiff, *as a result of reporting incidents of discrimination*, endured constant
> physical and verbal attacks by the Defendants; Plaintiff was deliberately left out of
> decision making roles that were relevant to his position with QUALTEK, thereby
> rendering his ability to perform his assigned job to be compromised, and eventually
> resulting in his unlawful termination.

Complaint at 11, 16, *Hisey I* (Doc. No. 1-2) (emphasis added).

The allegations in this action, *Hisey II*, alleging retaliation against Mr. Hisey after he

reported race discrimination, are not "irreconcilably inconsistent" with the retaliation claim from

*Hisey I*. Indeed, contrary to the defendants' incorrect assertion that Mr. Hisey is bringing a race

discrimination claim in this action, Mr. Hisey brings a retaliation claim that overlaps with his claim

from *Hisey I*, the notable exception being that the claim in *Hisey I* was under Title VII and the

claim in this action is under § 1981. *See, e.g.*, Amended Compl. Count II & ¶ 32 ("The actions of

Defendants, in subjecting Plaintiff to retaliation for opposing unlawful race discrimination in the

workplace, ultimately resulting in the termination of his employment, constituted a violation of §

1981.").

Defendants also raise another purported inconsistency between the employment claims in

*Hisey I* and this action. According to the defendants, in *Hisey I* Mr. Hisey represented to the trial

21

and appellate courts that "the failure to reverse or modify the dismissal would be the end of his employment discrimination claims against QualTek," whereas here Mr. Hisey has raised a new employment claim, under a different statute. Mot. to Dismiss at 33. This, defendants argue, is inconsistent, because Mr. Hisey's employment claims did not in fact "end" with *Hisey I*.

Again, the defendants mischaracterize the actual statements made by Mr. Hisey. In his motion for reconsideration in *Hisey I*, Mr. Hisey asserted that because of the district court's dismissal, his "federal claims *under Title VII and the ADA are now time-barred*[.]" Mot. for Reconsideration at 9, *Hisey I* (Doc. No. 26-1) (emphasis added). Likewise, in his appellate brief in *Hisey I*, Mr. Hisey represented that "when [he] refiles this case in Pennsylvania federal court, his *Title VII and ADA claims* may be considered time-barred." *See, e.g.*, Brief of Appellant at 9, *Hisey v. QualTek USA, LLC, et al.*, No. 16-13477 (11th Cir. Aug. 5, 2016) (emphasis added). In other words, Mr. Hisey only represented that his Title VII and ADA claims would be time-barred, he did not represent that all potential employment claims would be time-barred, however. Indeed, as Mr. Hisey points out, his counsel said during oral argument before the Eleventh Circuit Court of Appeals that although "[t]his case is primarily an employment discrimination case[,] [Mr. Hisey] may have some, you know, subsidiary claims." Opp. to Mot. to Dismiss at 17. Counsel for the defendants made a similar statement during that oral argument, commenting that the *Hisey I* dismissal "doesn't mean that the plaintiff can't refile tomorrow and perhaps file state claims like breach of contract that would not be expired as of yet, or federal claims and seek equitable tolling." *Id.* at 17–18. Because in *Hisey I* Mr. Hisey only represented that his Title VII and ADA claims would be time-barred by their dismissal, that representation was not inconsistent with Mr. Hisey's decision to bring a § 1981 claim in this action.

### ii. Whether Mr. Hisey's Current Breach of Contract and WPCL Claims Are Inconsistent with His Claims in *Hisey I*

Mr. Hisey's breach of contract and WPCL claims are also not "inconsistent" with his prior employment-related claims. For two positions to be irreconcilably inconsistent, they must be "genuinely in conflict[.]" *Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 118 (3d Cir. 2003). But there is no conflict between alleging various employment law violations and separately arguing that the defendants violated Mr. Hisey's employment contract. One does not contradict the other. An employer can both retaliate and discriminate against an employee and breach its contract with the same employee.

The Court will not judicially estop Mr. Hisey's claims here.

### C. Whether Pleading Deficiencies Require Dismissal of Mr. Hisey's Claims

In addition to arguing that preclusion prevents Mr. Hisey from bringing new claims— which it does not—the defendants argue that Mr. Hisey's claim are inadequately pleaded. Mr. Hisey has two sets of claims. The first set includes a breach of contract claim and an alleged Pennsylvania wage law violation, and the second set includes a § 1981 retaliation claim.

### 1. Breach of Contract and WPCL Claims[8]

The familiar elements of a breach of contract claim are as follows: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citation omitted).

"The WPCL applies only to back wages already earned[.] Whether the particular monies sought are 'wages or compensation' depends upon the term of the contract between the parties.

---

[8] The at-issue contract, the Economic Interest Unit Plan, contains a choice-of-law provision stating that the law of the Commonwealth of Pennsylvania applies thereto. Amended Compl., Ex. A (Plan ¶ 12(c)). "In contract disputes, Pennsylvania courts generally honor the parties' choice of

The contract between the parties also determines whether the wages or compensation have been earned." *Allende v. Winter Fruit Distributors, Inc.*, 709 F. Supp. 597, 599 (E.D. Pa. 1989) (citations and quotations omitted).

Both claims depend on Mr. Hisey's alleged entitlement to redemption of his Units under the Economic Interest Unit Plan. The only breach alleged by Mr. Hisey is QualTek's refusal to redeem Mr. Hisey's Units under the Economic Interest Unit Plan. The only compensation allegedly owed to Mr. Hisey under the WPCL is for the Units QualTek was allegedly supposed to redeem. The Court first addresses whether Mr. Hisey was conceivably entitled to redemption under the Plan before turning to defendants' other arguments challenging the sufficiency of the WPCL claim.

### i. Whether Mr. Hisey Was Conceivably Entitled to Compensation under the Economic Interest Unit Plan

According to the defendants, Mr. Hisey cannot maintain a breach of contract claim or a claim under the WPCL because he was not entitled to compensation for his Units. The operative contract, the Economic Interest Unit Plan, states that terminated employees forfeit all unvested Units; the Plan only allows for redemption of vested Units. The defendants argue that because Mr. Hisey's employment was terminated before his Units vested, he forfeited his Units, there was no breach of the Plan, and Mr. Hisey was not entitled to any compensation attendant to the Units.

Mr. Hisey argues that this case should be governed by the prevention doctrine, which excuses a condition of performance in a contract when the opposing party wrongfully prevents the occurrence of the condition. *See Connelly Constr. Corp. v. Travelers Cas. & Sur. Co. of Am.*, No. 16-555, 2018 WL 3549281, at \*3 (E.D. Pa. July 24, 2018) ("[I]f a promisor is himself the cause

---

law provisions." *Seltzer v. Dunkin Donuts, Inc.*, No. 09-5483, 2011 WL 1532398, at \*5, n.11 (E.D. Pa. Apr. 21, 2011).

of the failure of performance of a condition upon which his own liability depends, he cannot take advantage of the failure.") (quotation and citation omitted). "[A] contractual right affording discretion may not be exercised in bad faith—arbitrarily, irrationally, or malevolently." *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 467 (S.D.N.Y. 2013), *reconsideration denied*, No. 13-1419, 2013 WL 6182949 (S.D.N.Y. Nov. 18, 2013), *aff'd*, 788 F.3d 98 (2d Cir. 2015), and *aff'd*, 788 F.3d 98 (2d Cir. 2015). According to Mr. Hisey, because QualTek itself unlawfully prevented Mr. Hisey's Units from vesting—by terminating Mr. Hisey's employment for protected behavior—QualTek prevented the occurrence of a condition precedent.

Although Mr. Hisey correctly characterizes the prevention doctrine generally, he does not discuss a line of cases stating that "the prevention doctrine does not apply where, under the contract, one party assumes the risk that fulfillment of the condition precedent will be prevented." *Doherty v. Am. Home Prod. Corp.*, 216 F.3d 1071 (Table), 2000 WL 777948, *2 (2d Cir. 2000) (citing *Mobile Communications Corp. of Am. v. MCI Communications Corp.,* No. 8108, 1985 WL 11574, at *4 (Del. Ch. Aug. 17, 1985)). Other courts, including courts in this District and other district courts in the Third Circuit, have recognized an assumption of the risk exception to the prevention doctrine.[9]

---

[9]     *See Fredericks v. Georgia-Pac. Corp.*, 331 F. Supp. 422, 427 (E.D. Pa. 1971), *dismissed sub nom. Fredericks v. Georgia-Pac.*, 474 F.2d 1338 (3d Cir. 1972) (citing exception to prevention doctrine and enforcing contract that terminated plaintiff's right to exercise stock option when plaintiff was fired); *see also Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*, 677 F.3d 1286, 1297 (11th Cir. 2012); *Dist.-Realty Title Ins. Corp. v. Ensmann*, 767 F.2d 1018, 1022–24 (D.C. Cir. 1985); *Lilly v. Envoy, LLC*, No. 15-0742, 2016 WL 7375271, at *7–8 (W.D. Wash. Dec. 20, 2016); *Cont'l Advisors S.A. v. GSV Asset Mgmt., LLC*, No. 14-05609, 2015 WL 7720752, at *5 (N.D. Cal. Nov. 30, 2015); *Robert Wood Johnson Univ. Hosp. at Hamilton, Inc. v. SMX Capital, Inc.*, No. 12-7049, 2013 WL 4510005, at *5 (D.N.J. Aug. 26, 2013); *King & King, Chartered v. Harbert Int'l, Inc.*, 436 F. Supp. 2d 3, 11 (D.D.C. 2006), *aff'd*, 503 F.3d 153 (D.C. Cir. 2007); *W & G Seaford Assocs., L.P. v. E. Shore Markets, Inc.*, 714 F. Supp. 1336, 1341 (D. Del. 1989); *A.I.C. Ltd. v. Mapco Petroleum Inc.*, 711 F. Supp. 1230, 1238–39 (D. Del. 1989), *aff'd*, 888 F.2d 1378 (3d Cir. 1989); *see also* 3A *Corbin on Contracts* § 767, at p. 545

Although the assumption of the risk exception may apply at a later stage of these proceedings, the Court is loath to apply it here and now, given Mr. Hisey's allegations that the defendants exercised their discretion in violation of federal law, *i.e.*, in bad faith. *See, e.g.*, Amended Compl. ¶ 33 (stating that Mr. Hisey was fired "[a]s a direct result of the aforesaid unlawful retaliatory employment practices engaged in by Defendants in violation of § 1981"). Applying the assumption of the risk exception in instances of alleged bad faith would allow the exception to swallow the rule, permitting contracting parties to exercise their discretion wantonly despite the fact that the very purpose of the prevention doctrine is to ensure that "discretion may not be exercised in bad faith." *In Touch Concepts, Inc.*, 949 F. Supp. 2d at 467.

At this point in the litigation, the Court accepts as true the allegation that the defendants acted unlawfully, and the prevention doctrine (but not the assumption of the risk exception) applies. Consequently, there is a factual question as to whether Mr. Hisey was entitled to redemption of his Units under the Economic Interest Unit Plan. There are also factual questions as to the *amount* of any potential damages, but the complaint nonetheless adequately alleges that Mr. Hisey suffered financial damages by not being compensated for his Units. *See Barsky v. Beasley Mezzanine Holdings, L.L.C.*, No. 04-1303, 2004 WL 1921156, at *4 (E.D. Pa. Aug. 30, 2004) ("At this stage of the litigation, it is entirely possible that [plaintiff[ can present evidence to calculate damages with a reasonable certainty" even though damages would require calculation of residual value of terminated employment agreement). The Court will not grant the motion to dismiss the breach of contract claim.

---

("[T]here are some cases in which some sort of prevention or interference is contemplated by the parties as quite proper and within the privileges of the promisor"); 5 S. Williston, *A Treatise on the Law of Contracts* § 677A, at p. 235 ("[A]n exception to [the prevention doctrine] must be made where the hindrance is due to some action of the promisor which under the terms of the contract . . . he was permitted to take").

## ii. The Defendants' Other Challenges to the WPCL Claim

Defendants have several other arguments challenging only Mr. Hisey's WPCL claim.[10] Because the Court concludes that the statute of limitations bars Mr. Hisey's WPCL claim, the Court only discusses application of the statute of limitations.

The WPCL has a three-year statute of limitations. *See* 43 P.S. § 260.9a(g) ("No administrative proceedings or legal action shall be instituted under the provisions of this act for the collection of unpaid wages or liquidated damages more than three years after the day on which such wages were due and payable[.]"). Mr. Hisey's employment was terminated on December 4, 2014. Amended Compl. ¶ 10. He filed this action on November 28, 2018.

The only question is whether Mr. Hisey filed this action within three years of the Units allegedly becoming "due and payable," pursuant to the Economic Unit Interest Plan. Paragraph 7(c) of the Plan states the following:

> Whenever any Economic Interest Units are to be redeemed as provided in Sections 7(a) or (b) above, such redemption shall occur within one hundred twenty (120) days after the date of termination of employment ("Redemption Date"), at a redemption price based on the lesser of the net value of the Company ("Net Value" defined below) as of December 31 of the immediately preceding calendar year or the last day of the immediately preceding calendar quarter. . . . The Company shall pay the redemption price in seven equal annual installments, plus interest at the minimum applicable federal interest rate on the outstanding balance of the redemption price.

Amended Compl., Ex. A (Plan ¶ 7(c)).

According to Mr. Hisey, the Units were not "due and payable" until the payment date of each "annual installment," meaning that each annual installment date triggers its own independent

---

[10]     The defendants argue that (1) the WPCL claim is barred by the statute of limitations, (2) Mr. Hisey is not entitled to payment of the Units under the WPCL, and (3) Mr. Hisey does not plead facts establishing individual liability under the WPCL.

statute of limitations. The defendants counter that the "Redemption Date" was the latest date on which the Units became "due and payable."

In the WPCL context, the Third Circuit Court of Appeals has refused to apply a "continuing violation" tolling exception to the statute of limitations where the plaintiff alleges that the defendant "had an obligation to provide [compensation] through a series of monthly payments." *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 213 (3d Cir. 2001). The court rejected that "failure to pay each installment establishes a separate cause of action on each occasion a payment is withheld," and instead held that "where there was an outright repudiation at the time the employees' services were terminated, it is reasonable to expect that the statute of limitations began to run at that point." *Id.* at 214. Pennsylvania courts have similarly rejected continuing violation theories in applying the WPCL statute of limitations. *See Andrews v. Cross Atl. Capital Partners, Inc.*, 158 A.3d 123, 144, *appeal denied*, 172 A.3d 584 (Pa. Super. 2017) (holding that where a breached contract provided for future distributions of earned compensation, "each distribution did not give rise to a separate action with a separate limitations period" under the WPCL). Mr. Hisey does not cite any contrary authority.

The Court concludes that the WPCL's three-year statute of limitations began to run on the Redemption Date, the latest possible redemption date being April 3, 2015 (120 days after termination on December 4, 2014). Because Mr. Hisey filed his complaint on November 28, 2018, more than three years after April 3, 2015, his WPCL claim is untimely. The Court dismisses the WPCL claim with prejudice.

### 2. Section 1981 Claim

Mr. Hisey also brings a § 1981 retaliation claim, alleging that QualTek terminated Mr. Hisey's employment as retaliation because he reported several QualTek employees' racist

behavior. Section 1981 encompasses "the claim of an individual (black or white) who suffers retaliation because he has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452 (2008).

Defendants advance four arguments in favor of dismissal: (i) the statute of limitations ran before Mr. Hisey filed his complaint, (ii) Mr. Hisey has not pleaded an actionable underlying violation of § 1981 as is required of retaliation claims, (iii) Mr. Hisey cannot establish causation between his protected activity and his termination, and (iv) Mr. Hisey has not pleaded facts establishing the individual defendants' liability.

### i. Whether the Statute of Limitations Bars the Section 1981 Retaliation Claim

The length of the statute of limitations for § 1981 actions depends on the at-issue provision of § 1981. In some instances, § 1981 has a two-year statute of limitations. *See White v. School Dist. of Philadelphia*, No. 05-0092, 2008 WL 2502137, *6 (E.D. Pa. June 19, 2008). But "[i]n 1991, Congress enacted legislation that . . . explicitly defined the scope of § 1981 to include post-contract-formation conduct[,] and [] since 1991, the lower courts have uniformly interpreted § 1981 as encompassing retaliation actions." *Humphries*, 553 U.S. at 451. The 1991 amendment to § 1981 is governed by the catchall four-year statute of limitations, 28 U.S.C. § 1658, which only applies to post-1990 federal enactments. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. at 383–84 (2004) (holding that § 1981 causes of action implicating "the conditions of employment," *i.e.*, conduct arising *after* an employee is hired, have a four-year statute of limitations pursuant to the catchall four-year federal statute of limitations).

Here, Defendants cite to this Court's cases applying the two-year § 1981 statute of limitations, arguing that Mr. Hisey's action is untimely because it was filed almost exactly four years after Mr. Hisey was fired. But Mr. Hisey's action accrued after Mr. Hisey began working at

QualTek and his claim relates to the "benefits, privileges, terms, and conditions of the contractual relationship," meaning the four-year statute of limitations applies. *Id.* (quoting § 1981(b)). As such, Mr. Hisey's action is timely.

## ii. Whether the Complaint Alleges an Actionable Underlying Section 1981 Violation

In *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788 (3d Cir. 2010), the court held that, "[i]n a [§ 1981] retaliation case[,] a plaintiff must demonstrate that there ha[s] been an underlying section 1981 violation." *Id.* at 798; *see also Ellis v. Budget Maint., Inc.*, 25 F. Supp. 3d 749, 757 (E.D. Pa. 2014) (Pursuant to *Oliva*, plaintiff was required "to demonstrate that there had been an underlying § 1981 violation."). The defendants here argue that Mr. Hisey has not alleged facts establishing any underlying violation. Defendants are incorrect.

The complaint contains more than sufficient allegations to establish an underlying § 1981 hostile work environment violation. Under § 1981, a work environment is hostile where the defendant engages in "severe or pervasive" discrimination. *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017). In *Castleberry*, the court held that a "supervisor's single use of the 'n-word' . . . can suffice to state a claim" for hostile work environment, because the "severe or pervasive" test is disjunctive. *Id.* Here, Mr. Hisey alleges that he reported QualTek employees for using that same slur, as well as numerous other similar racial epithets. Amended Compl. ¶¶ 16–20.

Defendants also appear to argue that, even to the extent Mr. Hisey alleges an underlying § 1981 violation, that violation itself occurred outside the statute of limitations and is therefore not actionable as the underlying violation. This appears to be an attempt to effectively apply the discovery rule to offenses underlying § 1981 retaliation claims. The Third Circuit Court of Appeals does not appear to have specifically addressed whether, in § 1981 retaliation cases, an underlying § 1981 violation must also have occurred within the statute of limitations, but it has

explained that courts "use [the plaintiff's] termination date . . . as the starting date for statute of limitations purposes." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 (3d Cir. 2009). Other courts have rejected such an application of the discovery rule, instead suggesting it would only apply to discovery of the injury, *i.e.*, at the moment of retaliation. *See Lattisaw v. D.C.*, 118 F. Supp. 3d 142, 157 (D.D.C. 2015), *aff'd*, 672 F. App'x 22 (D.C. Cir. 2016) ("First of all, it is not at all clear that the discovery rule even applies in [retaliation cases] because the discovery rule exception is usually reserved for tort cases that involve injuries that are difficult to discover. Second, even assuming that the 'discovery rule' applied to this case, it is discovery of the injury, not the other elements of a claim [that] starts the clock.") (citation and quotations omitted).

None of the cases on which Defendants rely stand for the proposition cited. *White v. Sch. Dist. of Philadelphia* applied the two-year statute of limitations to a § 1981 retaliation claim, but it did not analyze or discuss the applicability of the statute of limitations to § 1981 violations underlying a retaliation claim. 2008 WL 2502137, *6. And *Youssef v. Anvil Int'l*, 595 F. Supp. 2d 547 (E.D. Pa. 2009), does not discuss the statute of limitations for retaliation claims at all; instead, it deals with application of the statute of limitations to pre-1991 failure to promote claims. *Id.* at 560 n.7. The defendants' underlying violation statute of limitations argument fails.

Under *Castleberry*, there are allegations sufficient to establish an underlying § 1981 violation for hostile work environment.

### iii. Whether the Facts Alleged Support an Inference of Causation

For a retaliation claim to be actionable, the facts must support an inference that the plaintiff's protected conduct caused the defendant to retaliate. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000) ("[T]o advance a *prima facie* case of retaliation, a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took

31

an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action."). Defendants argue that Mr. Hisey has not established a causal link between his protected activities—his multiple reports to QualTek's management about racial discrimination—and his termination. But the timing here of Mr. Hisey's reports and termination of his employment is sufficient to support an inference of causation.

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Mr. Hisey last complained about racial discrimination on November 24, 2014, Amended Compl. ¶ 22–23, and he lost his job 11 days later, on December 4, 2014. *Id.* ¶ 24. Although courts tend to vary in analyzing the degree of temporal proximity necessary to be suggestive, the Third Circuit Court of Appeals has commented that the phrase means "within a few days but no longer than a month." *Yu v. U.S. Dep't of Veterans Affairs*, 528 F. App'x 181, 185 (3d Cir. 2013); *see also Fasold v. Justice*, 409 F.3d 178, 190 (3d Cir. 2005) (reversing summary judgment on Title VII retaliation claims where grievance was denied less than three months after plaintiff filed charges with the EEOC); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003) (retaliation ten days after protected activity was unusually suggestive for purposes of ADA retaliation claim).

Although this can be considered to be a close case, because Mr. Hisey's last protected activity preceded his termination by only 11 days, the Court concludes that Mr. Hisey has adequately pleaded facts to support causation.

32

#### iv. Whether the Individual Defendants Are Liable Under Section 1981

A plaintiff can sustain a § 1981 claim against individual defendants only if the individuals

"intentionally cause[d] an infringement of rights protected by Section 1981." *Cardenas v. Massey*,

269 F.3d 251, 268 (3d Cir. 2001).

> [A] claim seeking to impose personal liability under Section 1981
> must be predicated on the actor's personal involvement and there
> must therefore be some affirmative link to causally connect the actor
> with the [violating] action. Accordingly, directors, officers and
> employees of a corporation may become personally liable when they
> intentionally cause an infringement of rights protected by Section
> 1981[.]

*Johnson v. Res. for Human Dev., Inc.*, 843 F. Supp. 974, 978 (E.D. Pa. 1994).

The complaint does not contain any allegations that the individual defendants, Joseph

Kestenbaum and Christopher Hisey, were personally involved with or responsible for the decision

to terminate Mr. Hisey. Instead, Mr. Hisey merely alleges that the individual defendants were

"high-ranking corporate officers of Defendant QualTek who are actively involved in decisions

regarding employee compensation[,]" Compl. ¶ 37, and this allegation is not even included in the

§ 1981 cause of action. *See id.* ¶ 31 (incorporating, in § 1981 retaliation cause of action, paragraphs

1–30); *cf. id.* ¶ 12 ("Defendant Kestenbaum has been the Chairman of the Board and Manager for

Defendant QualTek, and Defendant Hisey has been the President and Chief Executive Officer

('CEO') for Defendant QualTek.").[11]

---

[11]     Count II, for retaliation, applies generally to "Plaintiff v. Defendants" and the included
allegations only state generally that "Defendants" engaged in retaliatory conduct (but do not
distinguish among the named defendants). Amended Compl. ¶¶ 31–34. "Shotgun" style
allegations like this have been criticized by this Court as insufficient. *See M.B. v. Schuylkill Cty.*,
375 F. Supp. 3d 574, 586 (E.D. Pa. 2019) (describing as shotgun pleading "a complaint that asserts
multiple claims against multiple defendants without specifying which of the defendants are
responsible for which acts or omissions, or which of the defendants the claim is brought against")
(citation omitted). Although the Court did not determine that the complaint in *M.B.* was a shotgun

The Court dismisses the § 1981 claim against the individual defendants without prejudice, to allow Mr. Hisey to more specifically allege that the individual defendants were themselves involved in the alleged retaliation.

## II.    Motion for Sanctions

In addition to moving to dismiss all of Mr. Hisey's claims, the defendants seek entry of sanctions against Mr. Hisey for bringing claims "for an improper and harassing purpose, without any grounds or evidentiary support, and that [are] barred on grounds of claim preclusion, claim splitting, and judicial estoppel." Mot. For Sanctions at 1. As stated above, the Court concludes that Mr. Hisey's claims are not barred on any of the preclusion grounds set forth by the defendants. *See supra* at pp. 10–23. Indeed, Mr. Hisey's claims do not present a relatively close call, as the defendants (at best) overreach in their application of the preclusion doctrines they have invoked. Hyperbole aside,[12] it is the defendants' motion for sanctions that more nearly approaches "play[ing] fast and loose" with the Court, stretching preclusion caselaw to the brink of (if not beyond) its precedential elasticity. Because Mr. Hisey's claims, as alleged, are not frivolous, the defendants' motion for sanctions is denied.

## CONCLUSION

Defendants go to great pains to characterize Mr. Hisey's claims in both the motion to dismiss and the motion for sanctions. But nothing in the motions convinces the Court that Mr. Hisey has attempted to mislead or exploit the judicial system. Ill-fated though Mr. Hisey's efforts to litigate his initial claims in Florida were, the *Hisey I* court never addressed Mr. Hisey's initial

_____

pleading, here, unlike the complaint in *M.B.*, the retaliation claim does not include "specific allegations and clearly identif[y] the individual defendants to whom [it] appl[ies]." *Id.* at 587 n.5.

[12]    The defendants characterize Mr. Hisey's lawsuit as "an affront to the judicial process[,]" Mot. for Sanctions at 2, and assert that Mr. Hisey changed his position "in bad faith with the intent to 'play fast and loose' with the Court." *Id.* at 31 (capitalization altered).

claims on their merits and nothing about *that* litigation prevents the Court here from entertaining *this* litigation. The motion to dismiss is granted in part and denied in part and the motion for sanctions is denied. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE